### LLOYD LUMBER CO. v. T. SOLON, SURVIVING PARTNER, ETC.

1. RULE OF DAMAGES FOR BREACH OF AN AGREEMENT AMOUNTING TO A SALE OF PERSONAL PROPERTY.

   Where an agreement provides that A shall have the sole right for the period of one year, to sell the cord-wood manufactured by B, with an option on the part of A, to extend the agreement for five years, and A incurs expenses, preliminary to performance on his part, and the contract is broken by B, before the expiration of the first year; *Held*, that this is practically a sale of personal property, rather than a right of taking the wood, and the measure of damages is the same as in a sale of personal property.

2. MEASURE OF DAMAGES WHERE THE SUBJECT-MATTER OF THE CONTRACT IS AN ARTICLE OF COMMERCE.

   Where, as in this case, the subject-matter of the contract is an article of commerce, the measure of damages, is the difference between the contract price and the market price, and not the profits which would have been derived from the sales.

3. RECOVERY OF DAMAGES FOR PERIOD BEYOND THAT CONTRACTED FOR, BUT WHICH IS COVERED BY AN OPTION—*Quaere*.

   Whether the plaintiff's damages can cover a period beyond the one year definitely contracted for, when he has given no notice of extension of the agreement according to the terms of the option—*Quaere*.

ERROR to the Court of Common Pleas of Lucas county.

HAYNES, J.

A petition in error is filed in this court for the purpose of reversing the judgment of the court of common pleas in an action tried in that court wherein Solon was plaintiff and the lumber company was defendant. Judgment was rendered for the plaintiff below. The questions arise mainly on the charge of the court.

The action was brought for an alleged breach of a contract that had been entered into between Solon and his partner, and the lumber company, the leading points of which were substantially these: The agreement was made on September 27, 1895, between the Lloyd Lumber Co. of the first part and Solon & Schoen of the second part. "The party of

the first part is engaged in a general lumber manufacturing business, including the manufacture of cordwood. That said party of the first part doth hereby agree to sell and transfer to the said parties of the second part the sole right to sell and dispose of all of the cordwood now in possession of the said party of the first part or to be hereafter manufactured by it." Then it makes provisions for the erection of sheds, and provisions in regard to the occupation of the sheds by the party of the second part, and the use of the office and telephone. The company further agrees not to dispose of any of its wood to other parties, reserving, however, the right to use for itself and its employees. And the parties of the second part agree to pay the party of the first part, its successors and assigns, 60 cents a cord for the first 1,500 cords which they shall sell or dispose of, 75 cents a cord for the second 1,500, $1 a cord for that which they may thereafter sell or dispose of. It was further agreed that payment should be made on the Monday of each week following the sale of the wood. It was further agreed that in case of a shipment or sale by the car load, the payment might be made thirty days after the shipment. And it was further agreed that the party of the second part should use the horse and team of the party of the first part, and pay thirty cents an hour. It then provides:

"It is further mutually agreed and contracted between the parties hereto that this agreement is made for and shall continue in force for a period of one year from the date of this contract, and that the agreement may be continued and renewed at the option of the party of the second part for a period of five years from the expiration of this contract, provided said party of the second part shall pay said party of the first part, its successors and assigns, for the wood which they may sell and dispose of at the rate of $1 per cord."

The petition was filed, setting up this contract, to a certain extent. It says:

"That plaintiff entered into said agreement in good faith, and went to great expense to complete an outfit to sell and deliver said wood, and by the labor, skill, and advertising were put to great expense in getting said business begun; and by reason of said labor, skill, advertising and money expended, had succeeded in getting said business started so that there was a large profit from the sale of said wood, and were faithfully carrying out on their part all the conditions of said contract with great profit to themselves for their labor and skill. That on or about the thirtieth day of July, 1896, and while said contract was still in full force, the defendant, without warrant or authority, and without the consent of plaintiffs, by force and arms refused to allow plaintiffs to take and sell any more wood, and have so continued and do now refuse to allow plaintiffs to enter upon the premises or take, remove and sell any of said wood, to their great damage in the sum of $5,000."

For which they ask judgment.

This action was commenced on August 31, 1896. The contract was made in September, 1895, and they soon after entered upon the preparation to do the work, and soon after commenced in fact to sell the wood, and continued to do so until this date, July 31, when, as alleged, the contract was broken.

The answer first denies the contract for some technical reasons, and then avers that the plaintiffs failed and neglected to make payments in said contract—failed in June, July, and August, 1896, to make payments

9 O C D 42

—which thereby terminated the contract; also sets up that they should use defendant's team, which they failed to do, and in that respect they failed to perform the terms of the contract.

The case came on for trial, and testimony was taken on behalf of both parties, tending to sustain the allegations of their respective pleadings, and tending to show the prices at which wood was selling at that time, and had been selling for the year previous, and also the cost and expense of selling the same. And thereupon the court came to charge the jury, and charged it substantially as follows:

"First. As to the first branch of the plaintiff's claim—as to the expense incurred of fitting up preparatory to the doing of the business provided for in this contract; this would be the reasonable value of the work and expense incurred in such proportion as the time occupied in the carrying out of this contract bore to the whole contract. The plaintiffs would not be entitled, of course, to all the expenses incurred in the building of these sheds and doing this advertising, for the reason that the plaintiffs have had a proportion of the advantage to be derived from these, in that they have sold this wood for the company from perhaps the fourth of October—you will get that date from the evidence—down to the thirtieth of July, 1896. But this contract was to continue for a length of time after that, which is shown by the contract already read to you. Now then, for the reasonable proportion of this expense that the value of the use they had of it bears to the value of the use of it that they did not have—if entitled to compensation in damages—they would be entitled to have.

"Second, as to the loss of profits: Here are the rules of law by which this question of recovery of profits is to be determined. It is frequently said that recovery cannot be had for profits; but that is not a correct statement, gentlemen, of the law. The broad, general rule in such cases is, that the party injured is entitled to recover all his damages, including gains prevented as well as losses sustained, and this rule is subject to but two conditions; first, the damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract; that is must be such as might naturally be expected to follow its violation. And they must be certain both in their nature and in respect to the cause from which they proceed. Or, as it is otherwise stated—substantially the same—first, the damages must flow naturally and directly from the breach of the contract, that it must be such as might be presumed to follow its violation, and must be, not the remote but the proximate consequence of the breach. In this case, gentlemen, this contract was not one providing for the purchase and sale of wood in the open market, but it was a contract providing for the carrying on of the business of selling wood produced and owned by the defendant company—produced in its business and to be sold by the plaintiffs to other parties under the conditions and stipulations of this contract, for the mutual advantage and profit of both parties—both the plaintiffs and the defendant company—and by this contract it was provided that the defendant company should receive from the plaintiffs the prices specified in the contract, and that the plaintiffs should be entitled to have and receive for their profit and advantage whatever excess they might realize from the sales of the wood over and above the prices paid and the expense of carrying on the business of selling and delivering this wood to these other parties; and therefore in determining the damages, if you reach the question of the plaintiffs' damages, the question before

you to determine will be, What was and has been the fair cash market value of such wood as this, delivered in the manner in which it was to be delivered, at the time of this contract and up to the present time? And from that you may infer and judge and determine as to what it will be during the balance of the time named in the contract. Second, What was the reasonable and fair cost and expense of such delivery and all other expenses connected with the sale of said property, in order to realize the price which they would get from their purchasers? What was the difference between the price the defendant was to receive and the net receipts of the plaintiffs—that is, the amount received by plaintiffs after deducting their expenses would be the rule of damages to be awarded to the plaintiffs, because it would be in accordance with the understanding to be inferred from this contract by these parties at the time the contract was entered into and during its performance.

Now, as to these damages, there can be but one recovery by these plaintiffs, if they are entitled to recover at all, for the breach of this contract, and in order that they may be fully compensated for this breach of the contract, if there has been a breach of the contract; and if they have a right to recover at all, this recovery would be for the full term which they at their option had the right to have this contract continue, because, if they should recover only for damages up to a certain time, they would be precluded from commencing any other suit against the parties for a breach of this contract."

It will be observed that the case is one in which the controversy arises in particular is regard to the rule of damages that the plaintiffs below are entitled to have, if they were entitled to recover. The question of damages under contracts is usually one of more or less difficulty. The one under this contract is one of considerable difficulty. The contract itself was rather peculiar. It was a contract whereby the lumber company was to sell these parties substantially all the wood that they manufactured, who were to account to the lumber company for it at a certain price. But the lumber company on its part did not covenant to run the mill an hour, or any length of time, nor to deliver any certain quantity of wood. Nor did the plaintiffs themselves agree to take all the wood. They had the privilege of taking it and of selling it. The contract was definite, in so far as time was concerned, for one year, and then at the option of the parties of the second part, it could be extended five years longer without giving notice to the lumber company. They say five years after the contract, but whether that meant five years or four, is perhaps immaterial. This contract was alleged to have been broken before the first year expired. The action was brought before the first year expired. There is no evidence that the plaintiffs below ever gave notice to the lumber company that they would extend this contract for the period provided in the option; and whether they would have a right to recover for damages after the first year in case of a breach of the contract, without formally and definitely giving that notice we think is very questionable. The point, however, has not been argued before us, and we do not decide it.

It is said in the charge that this is not a sale of wood, but it is a sale of the right of taking the wood. It seems to us it is practically a sale of the wood as manufactured by the lumber company. At least so far as the rule of damages is concerned it is the same as it would be in the case of the sale of personal property. It appears from the contract and from the evidence that there is a market price for wood purchased in this

market for the purpose of re-selling the same in the market; and the testimony tends to show that these parties might, if they chose, have gone into the market and purchased cordwood. We think the general rule of damages laid down by all the authorities is, that upon the sale of property, where there is other property of the same kind in the market which can be purchased, it is the duty of the party who claims that his contract has been broken to go into the market and purchase the property. If he has to pay more than he agreed to pay the other party, then he can recover the difference between the amount he has to pay and the contract price. And that would be the rule of damages. We think that is the rule that should be applied in this case—at least, we think the rule in regard to profits should not be applied, because under all the authorities, as we understand them, the rule in regard to profits is not alowed except in very peculiar cases, as where there is no other similar property in the market, or there is no market price for the property—that is, where the property has been sold in some form for a definite and particular price, and inasmuch as there is no market for the re-sale or repurchase of it, then the rule in regard to profits applies.

It would seem from Rhodes v. Baird, 16 O. S., 573, that quite an argument might be made here in favor of the proposition that the rule of damages here might be the value of the good will. This would depend upon all the contingencies of the case. But whether it is the contract rule or the true rule we do not deem it necessary for us to decide at the present time. It is sufficient that we hold that the rule as laid down by the court for the recovery of damages by fixing the profits, ascertaining the profits, for the whole term, and that without any regard as to whether these parties had gone on and worked afterwards, is not the true rule; and for that reason the judgment of the court of common pleas will be reversed, and the cause will be remanded for a new trial.

*R. S. Holbrook*, for plaintiff in error.

*M. B. Lemmon*, for plaintiffs in error.